IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Tyron Wade, | ) |
| Plaintiff, | ) Civil Action No. 6:11-3470-JFA-KFM |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| Ofc. Thomas, Warden Mr. Stevenson, Cpt. Mr. Jones, and Major Ms. Sutton, | ) |
| Defendants. | ) |

This matter is before the court on the defendants' motions for summary judgment (docs. 68, 71). The plaintiff, who is a state prisoner proceeding *pro se*, alleges in his complaint that the defendants used excessive force against him and failed to protect him from harm in violation of his constitutional rights.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On June 27, 2012, defendants Jones, Stevenson, and Sutton filed a motion for summary judgment. By order that same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. On June 28, 2012, defendant Thomas, who is represented by separate counsel, filed a motion for summary judgment. Another *Roseboro* order was issued on that same date, again advising the plaintiff of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response on July 25, 2012, and defendants Jones, Stevenson, and Sutton filed a reply on July 25, 2012.

## **FACTS PRESENTED**

The plaintiff alleges an excessive use of force claim in his complaint arising out of an incident occurring on November 11, 2011. In support of his motion for summary judgment, defendant Thomas presented the affidavit of Ann Hallman, who is the Branch Chief for the South Carolina Department of Corrections ("SCDC") Inmate Grievance Branch (doc. 71-2, Hallman aff.). According to Ms. Hallman, on November 13, 2011, the plaintiff filed a Step 1 grievance[1], Number BRCI-1894-11, raising issues related to this November 11, 2011, incident. The grievance was received by the Institutional Grievance Coordinator on November 30, 2011. At that time, a copy of the grievance was forwarded to the Division of Investigations due to the allegations made in the grievance (Hallman aff. ¶¶ 1-4, ex. A). The SCDC Inmate Grievance System policy provides:

---

[1]SCDC Policy GA-01.12 sets forth the steps in the grievance process (SCDC Policy GA-01.12, ¶13, doc. 71-2 at 11-12). As noted in *Jones v. Kay*, the time limits of this policy are summarized as follows:

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
>
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
>
> (3) the Warden should respond to the grievant in writing within forty (40) days;
>
> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
>
> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.
>
> *See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

No. 07-3480-SB, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007).

> Any grievance which alleges criminal activity will be referred immediately to the Chief/designee, Inmate Grievance Branch. The Inmate Grievance Coordinator will note on the grievance tracking CRT screen that the grievance has been forwarded to the Inmate Grievance Branch for possible investigation by the Division of Investigations and the date on which the grievance was forwarded. The Chief/designee, Inmate Grievance Branch, will consult with the Division of Investigations to determine if a criminal investigation would be appropriate. If deemed appropriate, the grievance will be forwarded to the Division of Investigations, to be handled in accordance with applicable SCDC policies/procedures. The grievance will be held in abeyance until the Division of Investigations completes their review/investigation. If it is determined that a criminal investigation is not required, the grievance will be processed in accordance with the procedures contained herein.
>
> If it is determined by the Division of Investigation that the grievance will be referred to SLED for review/investigation, the grievant will be notified in a Step 1 Warden's response that the grievance has been forwarded to SLED. As the time frame for SLED to conduct an investigation is out of control of SCDC, the Institutional Grievance Coordinator will forward the original grievance to the Inmate Grievance Branch and the grievance will be administratively closed until SCDC receives the final report. The grievant will then receive a Step 2 response to the investigation and will be given an opportunity to appeal to the next level if dissatisfied with the response.

(*Id.* ¶ 5 (quoting SCDC Policy GA-01.12, ¶15, doc. 71-2 at 13)).

The plaintiff was informed of this policy and the status of his grievance on November 30, 2011, when a copy of the grievance was returned to him with a note from the Institutional Grievance Coordinator at Broad River Correctional Institution stating:

> A copy of this grievance has been forwarded to the Division of Investigations for possible review due to the allegations made in the grievance. The time frames stated for grievances are not applied to grievances sent to the Division of Investigations. At some time in the future you will be notified of the decision on this grievance.

(*Id.*, ex. A).

Prior to the Division of Investigations being able to complete a review of the grievance, the plaintiff signed his complaint and delivered the complaint to prison authorities for mailing to the district court on December 19, 2011, less than three weeks after the

3

grievance was received by the Inmate Grievance Coordinator (*see* doc. 1-4). Moreover, in his complaint, the plaintiff admitted that as of December 14, 2011, he had not yet received an agency decision on the grievance (doc. 1 at 2).

On September 13, 2012, the plaintiff filed a letter to the Clerk of Court stating that he has now exhausted his administrative remedies. Attached to the letter was a copy of the Warden's response dated June 20, 2012, to the Step 1 grievance. The Warden responded as follows:

> All pertinent information and documentation has been reviewed. Upon receipt of your grievance, it was forwarded to the Division of Investigation for review. It has been determined that further investigation at that level is not warranted. Due to lack of evidence any disciplinary action brought against you has been dropped. You were transferred to Perry on 11/29/11 where you are currently housed.
>
> Based on this information, I consider this matter resolved. If not satisfied with my response, see Step 5 below.

(Doc. 71-1 at 2). The instructions at Step 5 stated: "If you are not satisfied with the Warden's decision, you may appeal to the appropriate responsible official within five days of your receipt of the Warden's decision, via the Institutional Grievance Coordinator" (*id.*). The plaintiff checked the box stating that he did not accept the Warden's decision and wished to appeal on August 16, 2012 (*id.*).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

In their motions for summary judgment, the defendants first[2] argue that the plaintiff has failed to exhaust his administrative remedies prior to commencing this action. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under

---

[2] As this court finds that the case should be dismissed without prejudice for failure to exhaust administrative remedies, the defendants' remaining arguments in support of summary judgment will not be addressed.

the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681.

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

In *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008), the Fourth Circuit explained that "[u]nder the [PLRA], prisoners must exhaust 'such administrative remedies as are available' *prior to filing suit in federal court* challenging prison conditions." 517 F.3d at 725 (emphasis added) (quoting 42 U.S.C. § 1997e(a)). The reason that the administrative remedies must be exhausted prior to the filing of a civil action, as opposed to after or contemporaneous therewith, was explained by the Supreme Court in *Porter*, in which the Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review

> might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

534 U.S. at 524–25.  Moreover, a prisoner may not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. *Cambron v. Harris*, C.A. No. 3:11-326-RMG-JRM, 2012 WL 1579580, at *3 (D.S.C. April 11, 2012), *Report and Recommendation adopted by* 2012 WL 1579497 (D.S.C. May 4, 2012).

Following the incident on November 11, 2011, the plaintiff filed a Step 1 Grievance on November 13, 2011.  On December 19, 2011, the plaintiff signed his complaint and delivered the complaint to prison authorities for mailing to the district court, without waiting for a final determination on his grievance.  As such, the plaintiff's case is premature as he remains in the administrative grievance process and has therefore not exhausted his administrative remedies as required by the PLRA.  Moreover, the plaintiff does not dispute that he failed to exhaust his administrative remedies, nor does he make any claim that his grievance, or a response to it, was refused or improperly delayed.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendants' motions for summary judgment (doc. 68, 71) be granted and the plaintiff's complaint be dismissed without prejudice for failure to exhaust administrative remedies.

December 13, 2012                                                             s/ Kevin F. McDonald
Greenville, South Carolina                                              United States Magistrate Judge

7

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).